**This order is SIGNED.**





**Dated: July 6, 2016**

**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

*uae*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy Number: 15-30297 |
| CURTIS BLAINE WAREHAM and RUTH ANN WAREHAM | Chapter 13 |
| Debtors. | Honorable William T. Thurman |

### MEMORANDUM DECISION

The matter before the Court is the Chapter 13 Trustee's (the "Trustee") and KSUE Corporation's ("KSUE") objections to confirmation of Curtis Blaine Wareham and Ruth Ann Wareham's ("Debtors") Second Amended Chapter 13 Plan dated January 29, 2016 (the "Plan"). The issues raised in this matter are whether: 1) Debtors' Plan is proposed in good faith pursuant to 11 U.S.C. § 1325(a)(7);[1] 2) Debtors filed their petition in good faith pursuant to § 1325(a)(3); 3) Debtors are contributing all projected disposable income to the Plan pursuant to § 1325(b)(1)(B); and 4) the case should be dismissed or converted pursuant to § 1307(c).

The Court conducted evidentiary hearings on confirmation of the Plan on May 27, 2016 and June 3, 2016 (the "Confirmation Hearing"). Matthew M. Boley appeared on behalf of

---

[1] All subsequent statutory references are to Title 11 of the United States Code unless otherwise indicated.

Debtors; Richard Terry appeared on behalf of creditor KSUE; Lon Jenkins, the Trustee, appeared

on behalf of himself; and Brian Porter appeared on behalf of the Trustee. The Court took the

matter under advisement at the conclusion of the Confirmation Hearing. Based upon the

documents submitted and the Court's own independent review of the matter, statutes, and case

law, on June 8, 2016, the Court issued an oral bench ruling, making findings of fact and

conclusions of law on the record under Federal Rule of Civil Procedure 52, made applicable to

this Confirmation Hearing by Federal Rules of Bankruptcy Procedure 9014 and 7052. The Court

reserved the right to issue a written decision and now issues the following Memorandum

Decision, memorializing the oral bench ruling issued June 8, 2016.[2]

As set forth herein, the Court denies confirmation of Debtors' Plan with leave to amend

and finds that Debtors filed their petition and Plan in good faith and not by any means forbidden

by law.

## I.    BACKGROUND

Debtors filed for Chapter 13 bankruptcy relief with this Court on November 3, 2015.[3]

Thereafter, Debtors filed their Plan on January 29, 2016.[4] Notice of the Plan was sent to the

official mailing matrix and thus is proper.[5]  Debtors are "below-median," according to the

analysis provided in Debtors' Chapter 13 Statement of Current Monthly Income and Calculation

---

[2] Any of the findings of fact herein are also deemed to be conclusions of law, and any conclusions of law herein are also deemed to be findings of fact, and they shall be equally binding as both.

[3] Case No. 15-30297, Docket No. 1, Chapter 13 Voluntary Petition. All future references to the Docket will be to Case No. 15-30297, unless otherwise specified.

[4] Docket No. 71, Second Amended Chapter 13 Plan. Debtors filed a plan on November 9, 2015 (Docket No. 9) and first amended plan on December 18, 2015 (Docket No. 48).

[5] Docket No. 73, Certificate of Service of Second Amended Chapter 13 Plan.

of Commitment Period and Disposable Income ("Form 22C") filed with the Court; thus, Debtors' applicable commitment period is not less than three years.[6] However, Debtors estimate completion of their Plan in about 56-months to accommodate the payment of certain secured and priority administrative creditors.

The Plan originally provided that Debtors would pay $1,090.00 per month until completion of the Plan.[7] Debtors amended the Plan on December 18, 2015 and proposed to pay $1,090.00 per month for 2 months and then $1,185.00 until completion of the Plan.[8] Debtors filed a motion to modify their Plan on February 18, 2016, wherein they proposed to increase the monthly Plan payments to $1,515.00 commencing with the payment due March 25, 2016.[9] At the Confirmation Hearing, Debtors orally modified their Plan to provide for (i) all pre-confirmation payments to be contributed as a "lump-sum" and (ii) an increase of their monthly Plan payments to $1,580.00.

The Plan also provides for contribution of tax refunds for years 2015, 2016, and 2017, if applicable. The Plan is a "base plan," meaning any remaining funds after payment of all administrative, priority, and secured claims will be distributed pro rata to non-priority unsecured creditors.

The Plan provides that Debtors will surrender certain assets to secured creditor Mountain America Credit Union ("Mountain America") in partial satisfaction of Debtors' obligations to

---

[6] Docket No. 12, Form 22C. "Below-median" means that Debtors' income is below the state's median income for the Debtors' household size. A debtor determines whether he or she is below or above the median state income and the applicable commitment period by filling out Form 22C.

[7] Docket No. 9, Chapter 13 Plan.

[8] Docket No. 48, Amended Chapter 13 Plan.

[9] Docket No. 79, Motion to Modify Chapter 13 Plan.

3

Mountain America.[10] Debtors will also pay the value of the remaining assets securing the obligation to Mountain America, together with interest, in equal monthly installments of $240.00 per month, through disbursements to be made by the Trustee.

KSUE, an unsecured creditor, filed an objection to confirmation of the Plan on February 22, 2016.[11]  KSUE contends that the Plan was not proposed in good faith as required by § 1325(a)(3), the petition was not filed in good faith as required by § 1325(a)(7), and the Plan does not comply with the disposable income requirements of § 1325(b)(1)(B) because Debtors failed to disclose all of their income on their business budget attached to Schedule I. KSUE also moved to dismiss or convert the case pursuant to § 1307 on the grounds that the petition was not filed in good faith and Debtors failed to disclose all of their income.

The Trustee filed an objection to the Plan on February 19, 2016.[12] At the Confirmation Hearing, the Trustee stated his only remaining objection was the resolution of the objection filed by KSUE.

Debtors contend that the petition was filed in good faith, and the Plan was also filed in good faith and is feasible, fair to creditors, and provides a greater return than creditors would receive in a chapter 7 liquidation. The parties have filed memoranda in support of their positions and request the Court determine whether confirmation of the Plan should granted or denied, and if denied, whether, the case should be dismissed.

---

[10] Mountain America objected to Debtors' Plan (*See* Docket No. 63) but withdrew the objection (*See* docket text entry on February 17, 2016).

[11] Docket No. 82, Continuing Objection to Confirmation of Plan. Unless otherwise stated herein, all references to "KSUE" refer to KSUE Corporation as the creditor in this case, not KSUE, LLC, which is a company belonging to Debtors.

[12] Docket No. 81, Chapter 13 Trustee's Continuing Objection to Confirmation of Plan.

## II.   JURISDICTION, VENUE AND NOTICE

The Court has jurisdiction over the parties and subject matter of this contested matter under 28 U.S.C. § 1334. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L) and the Court has authority to enter a final order. Venue is appropriately laid in the District of Utah under 28 U.S.C. § 1409. The parties do not object to venue or jurisdiction and notice of the Confirmation Hearing is found to be adequate.

## III.   DISCUSSION

### A.  Good Faith in Filing the Petition and Proposing a Chapter 13 Plan[13]

Section 1325 contains the requirements for confirmation of a chapter 13 plan. Debtors, as proponents of their Plan, bear the burden to prove the standards under § 1325.[14] Section 1325(a)(3) requires that a chapter 13 plan be "proposed in good faith and not by any means

---

[13] As stated herein, the analysis for whether a chapter 13 petition was filed in good faith and whether a chapter 13 plan was proposed in good faith is slightly different but essentially the same – totality of circumstances. As such, the Court will not perform a separate inquiry as to § 1325(a)(3), (7) and § 1307(c). *See Gier v. Farmers State Bank of Lucas, Kan. (In re Gier)*, 986 F.2d 1326, 1329 (10th Cir. 1993) (concluding that the totality of the circumstances test is as appropriate for a § 1307(c) inquiry as it is for a § 1325(a)(3) inquiry because the appropriate question is "whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of" Chapter 13) (citations omitted); *Brown v. Gore (In re Brown)*, 742 F.3d 1309, 1317 (11th Cir. 2014) (acknowledging that the non-exhaustive factors and the totality of the circumstances test are equally relevant to the determination of good faith under § 1325(a)(3), (7)); *In re Rodriguez*, 487 B.R. 275, 282 (Bankr. D. N.M. 2013) ("To determine whether a Chapter 13 petition was filed in good faith and whether a proposed Chapter 13 plan was filed in good faith courts employ a totality of the circumstances test.") (emphasis omitted); *In re Tomasini*, 339 B.R. 773, 777 (Bankr. D. Utah 2006) (concluding that "the inquiry under § 1325(a)(7) . . . is also governed by a totality of the circumstances test"); *In re Montoya*, 333 B.R. 449, 458 (Bankr. D. Utah 2005) (applying the totality of circumstances test to determine whether the debtor filed his Chapter 13 case in good faith).

[14] *Alexander v. Hardeman (In re Alexander)*, 363 B.R. 917, 921-22 (10th Cir. BAP 2007) (citing *Davis v. Mather (In re Davis)*, 239 B.R. 573, 577 (10th Cir. BAP 1999)).

forbidden by law." The term "good faith" is not defined by the Code.[15] The Tenth Circuit

provided a test, in *Flygare v. Boulden*, to determine whether a debtor filed their plan in "good

faith."[16] The thrust of the inquiry under *Flygare* is "whether the plan constitutes an abuse of the

provisions, purpose or spirit of Chapter 13." [17] The Court must analyze "each case on its own

facts after considering all the circumstances of the case."[18] The *Flygare* test covers the specific

time period of the filing of a plan[19] and considers eleven non-exclusive factors as well as any

other relevant circumstances.[20]

---

[15] *In re Lundahl*, 307 B.R. 233, 243 (Bankr. D. Utah 2003) (citation omitted). "Good faith is measured by an objective, as opposed to a subjective, standard." *Id.* at 244 (citation omitted).

[16] *Flygare v. Boulden*, 709 F.2d 1344, 1347 (10th Cir. 1983).

[17] *Id.* at 1347 (quoting *United States v. Estus (In re Estus)*, 695 F.2d 311, 316–17 (8th Cir. 1982)).

[18] *Id.*

[19] *See In re Galanis*, 334 B.R. 685, 692 (Bankr. D. Utah 2005) (the *Flygare* standards focus on the debtor's good faith at the time of proposing a chapter 13 plan).

[20] The *Flygare* factors include:

> "(1) the amount of the proposed payments and the amount of the debtors' surplus;  (2) the debtors' employment history, ability to earn and likelihood of future increases in income; (3) the probable or expected duration of the plan;  (4) the accuracy of the plan's statement of the debts, expenses and percentage of repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;  (5) the extent of preferential treatment between classes of creditors;  (6) the extent to which secured claims are modified; (7) the type of debt  sought  to  be discharged and whether any such debt is non-dischargeable in Chapter 7;  (8) the existence of special circumstances such as inordinate medical expenses;  (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;  (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and  (11) the burden which the plan's administration would place upon the trustee."

Section 1307(c) also requires good faith on behalf of a debtor and provides that a court may convert or may dismiss a case, whichever is in the best interests of creditors and the estate, for cause.[21] Lack of good faith in filing the petition "is sufficient cause for dismissal under Chapter 13."[22] In determining whether a Chapter 13 petition has been filed in good faith under § 1307(c), the Court must consider the "totality of the circumstances" and the Tenth Circuit's *Gier* factors.[23]

Under § 1325(a)(7), Courts have authority to deny confirmation of a chapter 13 plan if the petition is not filed in good faith, which is a less drastic step than a request for dismissal or conversion under § 1307(c).[24] Like § 1307(c), the inquiry under § 1325(a)(7) considers the

---

*Flygare*, 709 F.2d at 1347–48 (quoting *In re Estus*, 695 F.2d at 317). Since *Flygare* was decided, the Bankruptcy Code was amended to include 11 U.S.C. § 1325(b). Accordingly, the good faith inquiry now "has a more narrow focus." *Anderson v. Cranmer (In re Cranmer)*, 697 F.3d 1314, 1319 n.5 (10th Cir. 2012) (quoting *Educ. Assistance Corp. v. Zellner*, 827 F.2d 1222, 1227 (8th Cir. 1987)).

[21] Dismissal for bad faith filing of a petition under 11 U.S.C. § 1307(c) places the burden of proof on the objecting creditor. *In re Werts*, 410 B.R. 677, 690 (Bankr. D. Kan. 2009) (noting that "the overwhelming majority of Courts have held that the party moving to dismiss or convert a case under § 1307(c) bears the burden of showing that the case was not filed in good faith").

[22] *In re Gier*, 986 F.2d at 1329 (quoting *In re Love*, 957 F.2d 1350, 1354 (7th Cir. 1992)).

[23] *See In re Galanis*, 334 B.R. at 693 (Bankr. D. Utah 2005) (concluding that the *Gier* factors are appropriate for determining whether the debtor filed a petition in good faith under § 1307(c)). After *Gier* was decided, the Bankruptcy Code was amended to include § 1325(a)(7), which provides that a court shall confirm a plan if the petition was filed in good faith, thus explicitly recognizing that good faith is required at both the petition and confirmation stages of a Chapter 13 proceeding. Although *Gier* was decided in 1993, the Tenth Circuit Bankruptcy Appellate Panel in 2007 recognized that the *Gier* case was "to date the Tenth Circuit's most comprehensive discussion of bad faith vis a vis § 1307." *In re Alexander,* 363 B.R. at 925.

[24] *See Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 375 (2007) ("Because dismissal is harsh . . . the bankruptcy court should be more reluctant to dismiss a petition . . . for lack of good faith than to reject a plan for lack of good faith under Section 1325(a).") (quoting *In re Love*, 957 F.2d at 1356).

"totality of the circumstances" and the *Gier* factors. The *Gier* factors evaluate whether the petition was filed in good faith and cover a longer period of time.[25]

The factors set forth in both *Flygare* and *Gier* examine the "totality of circumstances," despite their different but similar factors. At the plan confirmation stage, the factors of both *Flygare* and *Gier* are non-exhaustive factors that can be considered to analyze § 1325(a)(3), (7) and § 1307. Accordingly, a concurrent analysis of § 1325(a)(3), (7) and § 1307, considering both the *Flygare* and *Gier* factors, is appropriate to determine whether Debtors lacked good faith in filing their petition and proposing their Plan.

KSUE argues that confirmation of Debtors' Plan should be denied or the case should be dismissed or converted to chapter 7 because Debtors lacked good faith in filing their petition and proposing their Plan. Specifically, KSUE argues that: 1) Debtors have failed to explain transfers between themselves and their companies KSUE LLC; A/OK Pawn, LLC; Raw Earth, LLC; and BB C&R Service, LLC; 2) Debtors' Plan and required filings with the Court do not fully disclose all of the creditors and connections between Debtors and their companies; 3) Debtors have not provided full disclosure of their assets and income and the assets and income of their companies; and 4) Debtors have failed to provide sufficient information to substantiate their ability to make plan payments or to comply with the terms of their Plan. KSUE also contends that Debtors'

---

[25] *In re Galanis*, 334 B.R at 693 (concluding that "the *Gier* factors consider the debtor's actions before and after the petition was filed") (emphasis omitted). The *Gier* factors consider: 1) the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; 2) the timing of the petition; 3) how the debt arose; 4) the debtor's motive in filing the petition; 5) how the debtor's actions affected creditors; 6) the debtor's treatment of creditors both before and after the petition was filed; and 7) whether the debtor has been forthcoming with the bankruptcy court and the creditors. *In re Gier*, 986 F.2d at 1329.

petition was filed as a scheme to retain assets while not contributing all disposable income into the Plan.[26]

As an additional argument against confirmation of Debtors' Plan and in support of dismissal, KSUE contends that Debtors' business budget did not properly account for income and expenses and in some instances Debtors took inappropriate deductions from their companies' income and added unnecessary expenses to artificially reduce disposable income. KSUE argues that had Debtors properly accounted for their business expenses, Debtors projected monthly income would increase significantly, which would result in a higher return to creditors under Debtors' Plan. KSUE believes Debtors' failure to properly account for certain income and expenses is sufficient evidence for the Court to make a finding of bad faith. KSUE uses this argument to support its contention that Debtors are not contributing all of their net disposable income into the Plan as required by § 1325(b)(1)(B), which the Court also addresses herein.

The Trustee contends that based on the totality of the circumstances it neither appears that the Plan was proposed in bad faith nor that the petition was filed in bad faith.[27]

Debtors argue that their petition was filed in good faith and the Plan proposed in good faith. Debtors state they have provided all disclosures required by law, they are seeking ordinary Chapter 13 relief, and there are no classic badges of bad faith on behalf of Debtors.

---

[26] KSUE did not argue dismissal or conversion under § 1307(c) in its memorandum objecting to plan confirmation, or file a motion to dismiss or convert. At the Confirmation Hearing KSUE made an oral motion to dismiss under § 1307(c). The Court finds that the oral motion contained sufficient notice to parties in interest as required by § 1307.

[27] At the conclusion of oral argument and presentation of witnesses and evidence at the Confirmation Hearing, the Trustee stated that he was satisfied with Debtors' representations and believed Debtors met their burden to prove that their Plan was proposed in good faith and the petition was filed in good faith.

At the Confirmation Hearing, Mrs. Wareham explained the financial arrangements between Debtors' companies, the monetary transfers between Debtors' companies, and the formulation of Debtors' business budget. KSUE focused on accounting discrepancies and mistakes in Debtors' business budget but did not point to any objectively identifiable indicia of bad faith by Debtors. Accordingly, based upon the testimony heard, the evidence presented, and a review of the factors set forth in *Flygare* and *Gier*, the Court concludes under the totality of the circumstances that Debtors have met their burden in establishing that the petition was filed and the Plan was proposed in good faith. KSUE did not present sufficient evidence to persuade the Court to conclude otherwise. Debtors have failed to account for certain budgetary items in the Plan, which the Court will address next. However, the budgetary items appear to be mere oversights. As a result, there is no cause to dismiss or convert under § 1307(c) or deny confirmation of the Plan under § 1325(a)(3), (7).

### B. Debtors' Income

Under § 1325(b)(1)(B), the Court may not confirm a debtor's plan over the trustee's or unsecured creditor's objection unless "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan."[28] The inquiry under § 1325(b)(1)(B) usually turns on the interpretation and calculation of a debtor's "projected disposable income," but in this case, the crux of KSUE's argument is that Debtors are not complying with

---

[28] § 1325(b)(1)(B).

§ 1325(b)(1)(B) because they are understating income and thus not contributing all projected disposable income to the Plan.[29]

Debtors state that all of their income has been fully disclosed and their projected disposable income, as calculated by Form 22C, is $0.00. Debtors argue that the applicable commitment period for their Plan is 36 months because Debtors' income is "below-median." Debtors believe their Plan complies with the provisions of § 1325(b)(1)(B).

KSUE believes there is about $7,000.00 more in monthly income that Debtors have not properly accounted for in their business budget.[30] According to KSUE, if Debtors' income is fully disclosed by making corrections to Debtors' business budget, Debtors' projected disposable income will be greater than $0. KSUE also argues that Debtors are "above-median" and thus Debtors' applicable commitment period should be 60 months, rather than 36 months. The Court agrees with KSUE, for the reasons discussed below; therefore, confirmation of Debtors' Plan is denied with leave to amend.

At the Confirmation Hearing, KSUE focused its argument on miscalculations and discrepancies in Debtors' business budget submitted to the Court. Specifically, KSUE presented the Debtors' calculation of 2015 monthly averages of income and expenses based on a 6-month period of two of Debtors' companies ("2015 Budget").[31] Debtors' 2015 Budget was used to

---

[29] The parties do not dispute the definition or interpretation of "projected disposable income" as stated by the Supreme Court in *Hamilton v. Lanning*, 560 U.S. 505 (2010).

[30] The Trustee also filed an objection raising questions about Debtors' income but at the Confirmation Hearing the Trustee stated that all of his concerns were resolved. The Trustee suggested that if the Plan were confirmed he would request and require that Debtors submit to bi-monthly status review hearings, which would allow for updates on income to the Trustee, full disclosure throughout the duration of the Plan, and possible modifications of the Plan if necessary. Debtors responded by stating they consent to the request of the Trustee.

[31] KSUE's Ex. 43.

create Debtors' current monthly business budget ("Current Budget"),[32] which contains line items that are inconsistent and in need of revision for accuracy.

First, in Debtors' Current Budget, there is a line item for the expense of "Equipment Payments." This line item includes a sub-section for the expense of "All Others," which is budgeted at $2,500.00 per month. Based on Debtors' 2015 Budget, which Debtors state they rely on, their monthly average expense for "All Others" should only be $731.55. Debtors must amend their Current Budget and change the line item for "All Others" to $731.55. This adjustment will add $1,769.00 to Debtors' net disposable income and this amount, less any appropriate amounts for taxes, must be contributed to the Plan.

Second, on Debtors' Current Budget, there is a line item for the expense of "Repairs and Maintenance," which is estimated at $2,915.00 per Debtors' 2015 Budget. Ruth Wareham testified that one of Debtors' businesses, BB C&R Services, LLC, does not have an E-100 license[33] required to perform certain earth excavation work. Thus, the company does not perform earth excavation work. BB C&R Services, LLC does not own any equipment and currently leases or rents equipment. KSUE argues that the expense for "Repairs and Maintenance" should be removed because BB C&R Services, LLC does not have an E-100 license, does not do E-100 business and only rents and leases equipment and thus would have nothing to repair and maintain. Debtors failed to provide sufficient evidence or testimony to persuade the Court that the expense for "Repairs and Maintenance" was accurately reflected. Accordingly, based on the evidence, in order for Debtors to show that they are contributing all of their projected disposable income into the Plan for payments to unsecured creditors as required by § 1325(b)(1)(B),

---

[32] Debtors' Ex. F.

[33] An E-100 license is a State of Utah General Engineering Contractor license and is required for Debtors' companies to perform certain earth excavation work.

12

Debtors must amend their budget or provide further evidence to the Court to substantiate the expense for "Repairs and Maintenance" on the 2015 Budget.

Finally, Debtors' budgeted income decreased from $20,000.00 to $15,370.00 during an approximate two month period of time.[34] On those same exhibits Debtors' budgeted expenses decreased from $17,727.00 to $15,370.00. Debtors provided insufficient evidence and explanation for these amendments. Accordingly, Debtors should provide further evidence to the Court to substantiate these amendments and amend their budget and Plan to comply with the provisions of § 1325(b)(1)(B).

## IV.    CONCLUSION

Debtors' business budget is speculative; however, due to overstated expenses there appears to be more income which can be contributed to Debtors' net disposable income for Plan payments. Accordingly, for the reasons stated herein, confirmation of the Plan is denied pursuant to § 1325(b)(1)(B), with leave to amend. The motion of KSUE to dismiss or convert is denied without prejudice.

Debtors should file an amended plan, which can be set for hearing on shortened hearing notice if needed. An order has been entered denying Plan confirmation.[35] Accordingly, no new order is necessary to accompany this Memorandum Decision.


_____END OF DOCUMENT_____

---

[34] *See* Debtors' Ex. J filed December 11, 2015 and Ex. F filed February 18, 2016.

[35] *See* Docket No. 135, Order Denying Plan Confirmation with Leave to Amend.

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **MEMORANDUM DECISION** shall be served to the parties and in the manner designated below:

**By Electronic Service:**  I certify that the parties of record in this case as identified below are registered CM/ECF users.

- Darwin H. Bingham     dbingham@scalleyreading.net, cat@scalleyreading.net
- Matthew M. Boley     mboley@cohnekinghorn.com, jhasty@cohnekinghorn.com
- Lon Jenkins tr     ecfmail@ch13ut.org, lneebling@ch13ut.org
- Mark S. Middlemas     LundbergECFmail@Lundbergfirm.com, ecfmaildistgroup@lundbergfirm.com
- Kent W. Plott     LundbergECFmail@Lundbergfirm.com, ecfmaildistgroup@lundbergfirm.com
- Richard C. Terry     richard@tjblawyers.com, cbcecf@yahoo.com
- United States Trustee     USTPRegion19.SK.ECF@usdoj.gov

**By U.S. Mail -** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed R. Civ. P. 5(b).

**Curtis Blaine Wareham** and
**Ruth Ann Wareham**
610 S. Green River Blvd
PO Box 122
Green River, UT 84525
*Debtor*

**Matthew M. Boley**
Cohne Kinghorn
111 E. Broadway
11th Floor
Salt Lake City, UT 84111
*Debtors' Attorney*

**Lon Jenkins tr**
405 South Main Street
Suite 600
Salt Lake City, UT 84111
*Trustee*

**United States Trustee**
Ken Garff Bldg.
405 South Main Street
Suite 300
Salt Lake City, UT 84111
*U.S. Trustee*

**Richard C. Terry**
Terry Jessop & Bitner
341 South Main Street, Suite 500
Salt Lake City, Utah 84111
*Creditor*